Next case is Duncan Parking Technologies v. IPS Group, 2018-12-05. Mr. Rayfield. Good morning, Judge Lurie. Stuart Raphael for Duncan Parking Technologies. Claims 1 and 9 of the 310 parking meter patent at issue here are invalid because the undisputed facts in this record show that Alex Schwartz was the inventor of the electronics that were relied on from the 054 patent and copied into the 310 patent. As this case comes to the court from the PTAB, there is no dispute that Schwartz was an inventor on the 054 patent. Can I ask you a question that actually relates to the next case? Suppose in the next case that we agreed with the district court that the 310 is not infringed. You have stipulated on that condition to the mootness of your invalidity counterclaim. If we were to affirm the 310 non-infringement judgment, why do you have, why is there a case or controversy allowing you to proceed in this case where you've stipulated that you have no continuing interest in the invalidity of that patent? I'm not sure of the answer to the question. It may turn on the extent to which standing is broader in an IPR proceeding. We obviously would be happy if there were a non-infringement finding with regard to the 310 patent. But I'm not prepared to concede that it would deprive us of standing in an IPR proceeding. In the other case, you didn't simply have some dismissal without prejudice. You actually stipulated to the mootness, which as the invalidity ordinarily, the fact that there's no infringement, it doesn't follow automatically that there's no case or controversy about invalidity. So when you stipulate to mootness, it seems to me you're saying you have no continuing interest in, with respect to possible future products or anything else, in whether that patent is valid or not. And if that's right, I don't see how you have standing to proceed. With your permission, I'd like to defer that to my co-counsel to address that. Something to think about. No, it's a fair question. But as the case comes to this court, there's no dispute that Alex Schwartz was an inventor on the 054 patent. There's no dispute that if the relied upon electronics in the 310 patent were invented by Schwartz or co-invented by Schwartz, then the 310 patent is invalid. And although Dave King claims to be the sole inventor on Claims 1 and 9 of the 310 patent, his admissions below conclusively establish Schwartz's co-inventorship. And I wanted to highlight two broad categories of evidence and four individual pieces of evidence within those categories. We have both broad evidence of Schwartz's contribution and specific evidence of the particular relied upon components. With regard to the broad evidence, the best evidence is paragraph 45 of the King Declaration, which you'll find at page 1345 of the Joint Appendix, where King swears under oath that Alex, this is his son-in-law, Alex Schwartz, Alex's inventive contribution is limited to conception and development of how the various electrical components of the meter are interconnected and operate together. So King himself credits Schwartz with the conception of the electronics. Why is that particular issue of interpreting what the language of this non-lawyer person not a factual matter for the Board? I think with regard to what the standard review is, the standard review for inventorship is a de novo question of law, but the underlying facts are reviewed for substantial evidence. When you look at page 10 of the Joint Appendix where the PTAB issued its ruling on why it didn't think Schwartz was a co-inventor, they're not applying the correct law that looks at what was the contribution of the co-inventor, Schwartz. They look at, the way they pitch it at page 10 is, we think King had a high-level understanding of the electronics. That may show that King was a co-inventor, but it doesn't show that Schwartz was not a co-inventor. What the evidence shows, Judge Serrano, is that Schwartz was responsible for conceiving of how the electrical components were connected together. Paragraph 45 clearly says that in King's affidavit. And I think it's significant that paragraph 45 is not mentioned by the PTAB, and it's not mentioned by IPS in their brief. That's a glaring omission. That's a very important piece of evidence. Schwartz agreed with the description by King in that paragraph, and he said in his deposition that he, Schwartz, was, quote, instrumental in making it all work, unquote. That's at page 1521. The specific evidence of Schwartz's contribution you'll find at page 1533 of the Joint Appendix, where Schwartz testified that he had the idea how to, quote, connect the solar panels to recharge the battery, unquote. And that specific connection between the solar panels operatively connected to the battery is found in claims 1D and 9I of the 310 patent. And we showed that at page 20 of our opening brief. And that was the basis upon which this, the primary basis upon which this IPR was instituted. So, in other words, the specific connection in the 310 patent, you have undisputed testimony that Schwartz invented that, and King's general admission that Schwartz conceived of the electrical connections. IPS has a complete disconnect in its theory of the case here, right? Its theory of the case is King was the general inventor supervising all of this. He had two hurdles. One was the mechanical one of how you get a new meter to fit within the housing of an existing one. And he used the D, he relied on the D plus I inventors to help him with that. And that gave him credit for claims 8 and 10 because of that. And then, with regard to electronics, that was his second hurdle. And he said he relied on Schwartz, his son-in-law, and the head of technology to come up with a solution to that, and he did. And he admits that Schwartz gets credit for inventorship on the 054 patent, but he's absent inexplicably from the 310 patent. Now, I think we submitted to the court the In re. Verhoff decision, which came out right as we were filing our reply brief. And we submitted its document 39, a notice of supplemental authority. And Judge Lurie's opinion for the court in that case, I think, is as close a case as you have to this one. That case involved a dog mobility device. The inventor, Verhoff, said he exercised complete dominion and control over the development of that invention. But it turned out that his veterinarian helped him with one critical piece of it, which was how to connect the dog's toe to the device using a figure 8 loop. And this court held that because the inventor admitted that this other person came up with that component, that was sufficient to make the veterinarian a co-inventor and invalidated the patent because the co-inventor was not listed. This case is a little different from the dog case. This relates to whether the common subject matter was the invention of another 102E. That's correct. It's a 102E case instead of a 102F case. But I think the principles are the same. And Your Honor's opinion for the court in Panu is another good example where this court found that the co-inventor who was left off came up with a piece of the invention. It doesn't have to be equal contribution. But where there's a critical piece of it that somebody else comes up with, you have to put all of the inventors on the patent or it's invalid. And that's a clear application of the joint inventorship, of the inventorship entity doctrine. So the only evidence that I think the other side... Is this a question of invalidity for not having the proper inventorship or the 054 patent becomes a reference against 310? I think the former. It's invalidity for not naming all of the correct inventors, which I think was the situation in Panu as well. And as Your Honor pointed out in both cases, they've made the argument, well, you know, we could have just amended to add the co-inventor. But as this court pointed out, both in Panu and in Ravierhoff, that's not an answer. If you haven't done that, the patent's invalid. And I think the same is true under 102E as it would be under 102F. I'm sorry. Did the board have in front of it a 102F challenge to validity? Could it even? No, no. It was a 102E challenge. It wasn't a 102 and it is... It was a 102E challenge. Right. And I thought the only question was whether the 054 was essentially prior art, that is, of another under 102E. That's correct. And that in turn connects to the requirements of co-invention. Yes, that's correct. Okay. That's right. The only thing I think that the other side can point to is the general claim by King that he was the sole inventor. But this court made clear in the Emmerich-Ham holdings, among others, that a naked statement by the inventor that he invented it is not sufficient. What are the specific claim elements regarding electrical connection that you think Schwartz must have invented? Okay. And in particular, why would one not read all the claim elements here as saying, well, because you have to have an electrical connection. You have to have an electrical connection for there to be information transfer. But nothing in the claim claims how. And at most, Schwartz figured out how. But the idea that there had to be all the connections is all that's claimed. Well, I think three answers to that. One is I don't think they've ever argued that. Second, I mentioned earlier the specific idea that Schwartz came up with at page 1533 of the appendix where he said he came up with the idea of how to connect the solar panel to recharge the battery through the power management facility. And that connection is specifically shown in figure 8 of the 054 patent and then specifically referenced in claims 1D and 9I of the 310 patent. And so I think that one piece of evidence alone is sufficient to defeat this, to show that the patent's invalid for their failure to name Schwartz. So for these reasons, we think that the court should reverse the PTAB and invalidate claims 1 through 5 and 7 through 10 of the patent. We do have our fallback position that if the court were to remand this case, we should be entitled to obtain the use of the 71 documents that IPS refused to release from the protective order. We think that the PTAB erred in its legal analysis of factor 3 of the Garmin test. But at this point, I'd like to reserve the balance of my time. All right. Mr. Redfield, Mr. Tauzon. Thank you, Your Honor. May it please the court. Duncan has put forward two positions, one on inventorship, and they've actually basically reserved the discovery. So unless you have questions about the discovery issue, I probably won't get to it. On the inventorship issue, their theory of the case requires you to believe that IPS misled the examiner in naming the inventors on the 310 patent. And then rather than simply correcting it, they doubled down and misled the board to avoid correcting the misidentification of the inventors. It seems to me that the record here shows pretty clearly that the electronics were a significant part of the invention with respect to the 054. Yes, Your Honor. And that King recognized that that was a big hurdle and that he looked to Alex Schwartz to figure out how to implement that part of the invention. So that's why Schwartz is an inventor of the 054, right? Correct, Your Honor. So then it seems as though the 310 in the claims describes the same electronics connection as the 054, so why isn't Schwartz also an inventor of the 310? Okay, so the starting point for any inventorship analysis is always the claims themselves. And if you look at the 310 claims, it only describes a small subset of components, which Dave King had in mind well before he launched into the actual development program. And all it says for those components is that they have to be connected. Well, look at those components. It's a card reader. It's a coin validator that are connected to basically a logical system that makes sure that the information it's receiving is appropriate. It's a solar panel that's connected to a battery to charge the battery. It's a battery that's providing power to the whole system. That is a very, very high-level discussion. So, for instance, they're trying to read in from the 054 things like a power management system. A power management system in the context of a stand-alone battery-run device that's being charged by a solar cell is a great thing to have, but it's not required by the 310 claims. You could have a parking meter that just is running off a battery and if it runs through power. The discussion in the 310 claims, look at claim one, is pretty detailed about what the electric connection has to be. It doesn't seem to be sort of a high-level concept that King might have invented in connection with the 054. It seems like a pretty detailed implementation, which King himself admitted that he wasn't capable of and relied on Schwartz for. I disagree with a couple of premises of your question, Your Honor. The first is, if you view that as a detailed set of interconnections, compared to what they are citing, which is figure eight in the 054 patent, which has far, far, far more detail, far more components, including components that are totally unnecessary to the 310 claim. So what they're asking you to do is actually commit sort of a double error. They not only want you to read disclosure into the claim that's not in the claim, they want you to read disclosure from a different patent into the claims. Well, that produces a circular result. If you read requirements from the 054 patent into the 310 claims, well, yes, at some point you're going to be pulling Alex Schwartz stuff in. The question is, is that a necessary reading? They've never given that as a basis for a necessary reading. You also suggested that – Where does the record show that King alone invented that portion of the 310 patent claim one that refers to an electronic device electrically connected? It seemed to say that he only had the idea that there would be a connection and that the details of the connection, which are also set forth in the 310 claims, were Schwartz's. Again, let me point out two answers to your question. The first is, as for Dave King himself, remember, he himself is an electrical engineer. He has had decades of experience in the cell phone industry, decades of experience in the parking industry. For him to not know that you need to connect a solar cell to a battery to recharge it, just is facially absurd. The Board did not buy that argument. A second point is, of course, all the witnesses agreed to that. I'm sorry, the power coming out of the solar cell can't just sit there. It's got to go somewhere. Exactly, Your Honor. Exactly, Your Honor. And that would be sufficient for the system to work. So 310 would work for that. In the 054, you get a further improvement. There's power management, which makes sure that things aren't draining the system too quickly, and so you get a longer life out of that. You get advantages if it's overcast or shadows or shade or something. So there's no question that Alec Schwartz made a significant contribution in the 054. I think he said before that in your narrative about a double error, he said something about there are aspects of Figure 8 of the 054 that don't appear in the 310 and that one can understand the testimony that Schwartz invented, kind of co-invented the entirety of Figure 8. What aspects appear in Figure 8 that don't appear in the claims of 310? Okay, so the best illustration of this comes from their opening brief, if you turn to pages 19 and 20. They highlight the components that they think are involved. We, incidentally, don't agree with that. We think that overstates it, but they've highlighted it. You'll see that it's a minority of the components in the figure. They repeatedly point to testimony. The six boxes that they show in yellow and there are 15 other boxes. They repeatedly point out in their testimony that when talking about the 054, that Schwartz and King agreed that Schwartz came up with the how to connect. The fact that they had to be connected was King's idea from the beginning. But the 310 claim isn't just the idea of being connected. It says connected to the reader so as to receive information electronically. So it talks about not just the idea of a connection. It has a connection that performs specific functions. Again, two answers to this. First of all, nobody's argued that this is an unpredictable art, such that an electrical engineer with years of experience wouldn't know that data has to go from the readers to the controller or the power has to go. But wait a second. King says there was a big hurdle in figuring out how to do the connections. He's talking about that in the context of the 054, which has additional features such as a power management facility, which makes it a far better system. But the other thing that I think is significant here is they've hung their I believe it's on page 17 of their opening brief. They show figure eight is actually based on a schematic from Alex Schwartz. And if you look at the schematic, they cite it to appendix 1390. It shows that that schematic was created July 25th, I believe, 2005. If you actually go and look at the work being done by the mechanical design team, if you look at appendix 1213 through 1216, you find that the Australians have pointed out a problem. Alex King agrees to the solution, picking configuration nine. All of this discussion is happening in March and April of that year, so months before Alex actually came up with the schematic. And at that point, the email from Dave Jones to Dave King says, we're waiting for the PCBs, the printed circuit boards. So at that point, so March and April of 2005, they've already settled on the designs and even the improvements reflected in claims eight and ten of the 310 patent. They're still waiting for the printed circuit boards from Alex at that point. And their own evidence, the thing they're pointing to, doesn't come along until July. So just as a matter, it doesn't make sense as a matter of logic, Your Honor. If you think about it, why is Dave King charging ahead with his development project on the mechanical side when he has no idea if the electronics are going to work? He knows the electronics are going to work. Everybody knows they're going to work. Alex's job was to make them work better. But that better isn't reflected in the 310 claims unless you read elements that are nowhere claimed in those claims from one patent into the claims of another. And that's just not the way claim construction is done. If you have questions about discovery, I'd be happy to address them. Are there any other questions from the panel? Apparently not. Well, I'm happy to cede the balance of my time, Your Honor. Mr. Reichelt. Thank you, Your Honor. I don't think that IPS gave an adequate answer to Judge Dyke's question about why isn't Schwartz a co-inventor with regard to the electronics. I really don't think you got an answer to that. I think it is plain from the specific testimony that Schwartz not only did all of the electronics, but he did specifically, he came up with the idea of how to connect the solar panel through the power management facility to the rechargeable battery. That was his conception. I'm sorry, just on that, can you just show me where in the 310 claims there's reference to the power management facility so I can follow that? Yes, Your Honor. Appendix page 137, column 3, line 57, which we've labeled as claim 1D, a solar cell operatively associated with said connections to charge said battery. So it's the operatively connected that references the power management facility through which it goes. I'm sorry, is there a claim construction that requires a power management facility through that language? I don't believe that the PTAB construed that language, but the testimony was that you needed that to make it work. You can't just connect a solar cell to the battery. You've got to have a way to modulate it in between. And then the other one is 9I, which is column 4, line 64, a solar cell operatively coupled with a rechargeable battery to charge the rechargeable battery, the solar cell being disposed to receive light via the second window. And so what I've pointed out is the general testimony that Schwartz and King and Mises conceived of all of the electronic connections to make it work. And then specifically, Schwartz said in his deposition, I came up with that idea of how to get the solar cell to work with the rechargeable battery. That was his idea, his conception. So I really think the case is very much like in Ray Verhoff where you had the inventor who claimed to be the sole inventor did much of the work, if not most of the work, but you had a critical component. In that case, the figure-eight loop to connect the dog's toe to the canine mobility device, and here are the electronics. And without Schwartz, it wouldn't have worked. And so we're not saying that King didn't have some high-level idea, but Schwartz plainly had the specific contribution of how to make the electronics work. And I think where the PTAB erred was in looking at King's contribution, whether he had some high-level understanding, instead of applying the test from cases like Panu and in Ray Verhoff, which looked at the co-inventor's contribution, whether that was significant enough to warrant co-inventor status. And because of that error, this Court should reverse the PTAB and hold that claims 1 through 5 and 7 through 10 are invalid. Thank you. Thank you, counsel. We'll take the case under advisement.